UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LYNNE P. COLIZZO,

**Plaintiff**

v.                                                                                         C.A. NO.

HIGHGATE HOTELS, L.P.
DBA GRADUATE PROVIDENCE,

**Defendant**

### PLAINTIFF'S COMPLAINT FOR RACIAL DISCRIMINATION AND AGE DISCRIMINATION UNDER THE RACIAL AND AGE DISCRIMINATION EMPLOYMENT ACTS

Now Comes the Plaintiff Lynne P. Colizzo ("Plaintiff"), by and through her attorney, and hereby files this civil action Complaint and Jury Demand ("Complaint") against Defendant Highgate Hotels, LP dba Graduate Providence("Defendant"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

### INTRODUCTION

1. This action is brought by Plaintiff seeking declaratory and injunctive relief and compensatory and punitive damages for acts and/or omissions of the Defendant in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"); the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28- 5-1, et seq. ("FEPA"); and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, et. seq. ("RICRA").

2. The Plaintiff, at all times relevant hereto, is a resident of the City of Providence, County of Providence, State of Rhode Island. At all times relative herein, the Plaintiff was over 40 years of age, see 29 U.S.C. § 631(a).

3. Defendant is a foreign limited partnership duly organized and incorporated under the laws of the State of Delaware, with a principal office located at 545 E. Carpenter Way, Suite 1400, Irving, TX 75062. At all times relevant herein, the Defendant was an "employer" as defined by §11(b) of the Age Discrimination in Employment Act, as amended [29 U.S.C. §630(b)]. The Defendant is authorized to do business in Rhode Island. At all times relevant hereto, the actions of the Defendant's agents and/or employees are attributed to the Defendant based upon vicarious liability policies.

4. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the ADEA.

5. Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

6. This civil action challenges Defendant's unlawful racial discrimination and age discrimination with respect to its hiring policies and practices.

**FACTS RELEVANT TO THIS HEREIN COMPLAINT**

7. In April of 1988, the Plaintiff was hired by the Defendant's predecessor, as a Hotel Operator.

8. In 1989, the Plaintiff was promoted into a position in Reservations.

9. In 1990, the Plaintiff was promoted to Front Desk Coordinator.

10. In 1995, the Plaintiff was promoted to the position of Accounts Receivable Clerk, which was later expanded to Accounts Receivable Clerk/Payroll Processer. The Plaintiff's position was neither management, nor union.

11. Among non-management and non-union employees, the Plaintiff was the oldest employee in the hotel. The Plaintiff even won the 2005 ROSE award, awarding her as the winner for Recognition of Service Excellence for the State of RI.

12. During May of 2016, the Plaintiff filed a complaint with her superiors against Jennifer Bergeron, who was the Assistant Director of Finance, and who was one of the Plaintiff's supervisors, regarding an unfair yearly review.

13. The Plaintiff filed said complaint with Jane Eccleston, HR Director, and Kim Alves, Director of Finance. Ms. Eccleston and Ms. Alves agreed to re-do the Plaintiff's review in 6 months and have Ms. Alves conduct said review, other than Ms. Bergeron.

14. When management, at the time, conducted this review 6 months later, they found that Ms. Bergeron was incompetent, and did not allow her to conduct any more reviews of the Plaintiff in the future.  At all times relevant hereto, Ms. Bergeron was acting as an agent of the Defendant.

15. Since 2016, Ms. Bergeron has tried to blackball the Plaintiff, within the Defendant and its predecessor.

16. The hotel was sold in 2017; the new owners obtained the Defendant's management services.

17. When the hotel was sold, all employment records were removed from the property and were held by the previous owners, which included records relative to the above complaint filed by the Plaintiff.  Therefore, when Ms. Bergeron retaliated against the Plaintiff, the Defendant did not have those records in which to review.

18. When GM, Scott Williams came into the Plaintiff's office to introduce himself to the accounting department, he twice questioned the Plaintiff's ROSE award, which was awarded to her as the 2005 winner for Recognition of Service Excellence, for the State of RI, asking her what she actually did to deserve it.  The Plaintiff chose to respond with just a smile in a humble manner to avoid any kind of a response that could be interpreted as exulting herself.  Subsequent to the Plaintiff's smile, Mr. Williams' followed up and stated, "no, I really want to know what you did to deserve that" and attempted to attribute it and/or imply that she received the award due to her number of years employed, as opposed to her professional and competent service excellence.

19. During 2018 and 2019, the Plaintiff was bypassed for bonuses, for which she was qualified.  The Defendant, knowing it was the Plaintiff's job to process the payroll, had her enter these bonuses, which included an employee with less than one year of seniority and the Plaintiff's co-worker of approximately 7 years, while simultaneously and intentionally excluding the Plaintiff.  The Plaintiff was informed that the final decision rested solely on the Defendant's General Manager, Scott Williams.

20. In August 2019, Rayma Ferrer, the Regional Director of HR, asked the Plaintiff some probing questions, while on a lunch break.  The Plaintiff, assuming Ms. Ferrer was looking out for her employees' well-being, expressed to Ms. Ferrer a fear of her job being outsourced to India, since approximately 2% of the Plaintiff's duties had already been outsourced.

21. Ms. Ferrer reassured the Plaintiff that only tedious tasks were being outsourced to India, to make more time available for more detailed tasks.  About three weeks later, Ms. Bergeron repeatedly told the employees in the Accounting Department [where Plaintiff worked] that 80% of the entire Accounting Department tasks were expected to be outsourced to India.  This was not only a lie, but it was also a lie based on the fear that the Plaintiff expressed to Rayma Ferrer, the Regional Director of HR, 3 weeks earlier.  The Plaintiff has evidence of these lies.

22. In late September 2019, Ms. Ferrer, in a meeting with the Plaintiff, the Director of Finance, and the HR Manager, offered the Plaintiff a severance package of six weeks and informed the Plaintiff that her services were no longer required for Accounts Receivable. On this day, Ms. Ferrer apologized to the Plaintiff by referencing their previous month's conversation when Ms. Ferrer reassured the Plaintiff that her duties would not be outsourced to India. Ms. Ferrer stated that because of that false assurance she felt bad and offered the Plaintiff an alternative to a severance pay, which was 3 days of work in her current office with the possibility of finding a 4th and possibly a 5th day of work somewhere within the hotel.

23. A few days later, the Plaintiff informed Ms. Ferrer and Ms. Lafratta that she was declining the severance pay and had decided to remain employed by the Defendant. The Plaintiff added that she felt it was a privilege to be an employee of the prestigious hotel for over three decades, and therefore wanted to stay. At that point, there was a discussion of giving the Plaintiff three [3] days in her current office and filling her other two [2] days in another position. On this day, when the Plaintiff was inquiring additional work to fill a 40-hour work week, Ms. Lafratta suggested the Plaintiff take a dishwasher position, but in her subsequent sentence retracted the offer, for the sole source reason that the dishwasher position was for union employees only.

24. Subsequent to the Plaintiff's refusal of severance pay, Jennifer Bergeron attempted twice to lure the Plaintiff to take an open position at the Hotel Indigo, in Newton, MA, but the Plaintiff was not interested due to the commute. Ms. Bergeron omitted to mention the fact that the Newton hotel was scheduled for closure, to the Plaintiff.

25. In the meantime, the Plaintiff opened a profile on LinkedIn, seeking a possible part-time position to compensate for the loss in pay, due to her alleged job abolishment. On October 11, 2019, the Plaintiff notified Alyssa Mariano (HR Asst.) regarding the LinkedIn account, to ensure them that she was only seeking a part-time position and that she was not looking to leave the hotel. The following workday, October 14, 2019, Naomi Arruda, who is in her 20s, reported to the Plaintiff's department to train for the position in Newton, MA. The Defendant had been under the impression that the Plaintiff was departing the hotel, due to the LinkedIn account. On or around this same time, the Defendant began training Naomi Arruda for the same Newton hotel position to which Ms. Bergeron tried to twice lure the Plaintiff. The Defendant was waiting for the Plaintiff to find another job, to accomplish a foreseeable future decision to move Naomi Arruda to a full-time position, in the Plaintiff's former office, because Naomi Arruda was working in a supervisory-subordinate relationship with her sister, which was in violation to page 9 of Highgate's policy associate handbook and employee manual. Moving Naomi Arruda to the Plaintiff's former office or the Newton property would remedy this company violation.

26. Subsequent to the Plaintiff refusing the severance offer to leave and refusing the attempted lure to the Newton property, Naomi Arruda transferred to the Newton property full time. The Plaintiff, being in the office, couldn't avoid hearing Ms. Bergeron discussing the issues Naomi Arruda was having, about the hour and a half commute each way, due to traffic. To accommodate her, they told Naomi Arruda that she could come in whenever she wants, for

example 10:00AM, when traffic subsides.  When it snowed, the Defendant allowed Naomi Arruda to work in Providence, where they set up a table for her in the Plaintiff's office.  On such a day that Naomi Arruda was in Providence due to snowy conditions, sales manager Courtney Northup asked Naomi Arruda, "are you back here now?".

27.  In a conversation between the Plaintiff and Crystal (Marroquin) Papino, Ms. Papino described herself, and her sister Naomi (Marroquin) Arruda, as "Latina's".

28.  Rayma Ferrer, (who previously offered the Plaintiff severance pay, while apologizing for her previous month's false assurance statement that the Plaintiff's job would not be outsourced in August of 2019 and who ended up terminating the Plaintiff on 6/12/2020), came from Puerto Rico.  Rayma Ferrer is involved with the Latino community, such as The Spanish Revolution, Puerto Rico Rises of Boston, and many other similar Latino organizations.  Rayma Ferrer created a public video, at times speaking in Spanish, wearing a tangerine wig and a mermaid tiara (when it was not Halloween), imploring that risky decisions must be made in occupational scenarios.  Rayma Ferrer is an eccentric individual who has openly recommended that her followers take risky decisions.

29.  Rayma Ferrer was trying to remedy the supervisory-subordinate relationship Highgate policy violation of Naomi (Marroquin) Arruda working for her sister Crystal (Marroquin) Papino by trying to give Naomi (Marroquin) Arruda the Plaintiff's job for the sole source reason of finding a suitable position to keep her Latino counterpart employed on property.  The lies, tricks and scams against the Plaintiff were RACIALLY MOTIVATED and since Naomi (Marroquin) Arruda is in her 20's, it is also age discrimination against an employee in a protected class.

30.  The Plaintiff had been told by Ms. Ferrer that she was to keep her hands out of Accounts Receivable duties, because the position was abolished, and that she was to pass all of her files to Ms. Bergeron.  It was at this point, due to the Defendant's intentionally misleading comments, that the Plaintiff was under the assumption that Ms. Bergeron would be training Metriqe (an accounting company in India), and Ms. Bergeron would be forwarding these tasks to them, after they were completely trained on hotel procedures.

31.  In November 2019, there was a conference call with Mr. Oftring, Ms. Bergeron, Diana Gagnon from Accounts Payable, Michael Youssef [from corporate], and the Plaintiff.   Ms. Bergeron bullied and berated the Plaintiff and had expected her to resume some duties of her abolished position, in which Rayma Ferrer ordered the Plaintiff to keep her hands out of.  Ms. Bergeron stated she was overwhelmed in taking over the Plaintiff's duties and she could not complete all the Accounts Receivable tasks, as the Plaintiff had done prior to the above changes, along with maintaining her own responsibilities.

32.  In December 2019, Ms. Lafratta harassed the Plaintiff by docking the Plaintiff a holiday's pay (Thanksgiving Day).  The action was disputed by the Plaintiff to her immediate manager, Mr. Oftring, who in turn approached Mr. Williams for verification, since he agreed with the Plaintiff.  Mr. Williams agreed that the holiday pay should not have been docked and instructed

Ms. Lafratta to process the backpay in the next pay period, to which she made clear that she did not agree but would comply.

33. On February 17, 2020, Ms. Bergeron, in an email copied to Scott Williams, General Manager, gave the Plaintiff back approximately 75% of her previously abolished AR job, but to complete within 3 days. Payroll processing sometimes consumed 1-1 ½ days, leaving 1 ½ days to complete the rest of her other tasks, including this additional 75% of the Plaintiff's abolished AR duties.

34. On February 18, 2020, the Plaintiff discovered that it was Ms. Bergeron who voluntarily commenced the idea to perform the duties of the Plaintiff, causing Ms. Bergeron to work until 11:00 PM in the office and from her home on the weekends. These actions of Ms. Bergeron mystified the head of the Department, Dan Oftring (Ms. Bergeron's boss). Because Plaintiff's former duties went into disarray, the Defendant's remedy was to give the Plaintiff back 75% of the job they abolished from her, while simultaneously keeping the job abolished.

35. The Plaintiff feels that this restriction on her work hours was designed as a set-up for failure, which is officially labeled as a Negative Inconsistent Workload. On February 20, 2020, the Defendant rejected the Plaintiff's request to return to full time in the accounting office for the Plaintiff to complete the added 75% of her previous abolished tasks that were given back to the Plaintiff on February 17, 2020.

36. The last 25 years of the Plaintiff's 32-year employment with the hotel consisted of performing AR tasks, and the Defendant's agents and employees knew there was no way the Plaintiff could complete Payroll Processing and Accounts Receivable successfully in 3 days.

37. The Defendant did not demonstrate a legitimate business objective as to why they reduced two days of the Plaintiff's work week, while simultaneously providing bonuses to multiple employees, being management and nonmanagement, while the Plaintiff did not receive said bonuses.

38. On February 20, 2020, in a meeting with Mr. Oftring, Ms. Lafratta, and Mr. Williams, the Plaintiff became suspicious of false labor statistics. When the Plaintiff asked why corporate was being led to believe that AR is being outsourced to India, when it is being performed on property, Mr. Williams replied, "because that is the way corporate wants it". True or not, it was the scenario the Defendant wanted the Plaintiff to believe she would be working under, when she was to resume the added 75% of her previously abolished AR duties, as ordered on February 17, 2020. Assuming good faith, the Plaintiff firmly believes this was stated to continue the lie that the Plaintiff's AR position was abolished due to an Indian outsourcing.

39. The Plaintiff realized that no additional Accounts Receivable tasks, aside from the 2% previously noted, were being performed by India. When the Defendant, through its agents and employees, tried to give the Plaintiff back most of her previously abolished duties due to unfruitful results of the pretext job abolishment, this displayed that the AR tasks were not, and were never, abolished.

40. Because the Plaintiff was not comfortable participating in what was presented to her as intentionally, inaccurate labor statistics, along with dodging a set up for failure tactic by way of a Negative Inconsistent Workload, as soon as the Plaintiff left the February 20th meeting, she inquired with Sharon Keeler, Director of Revenue, about a transfer to Reservations on a full-time basis at $6.00/ per hour less than what she was making.  Mr. Williams approved, but the Plaintiff was still expected to continue to Payroll Process for 1 day/week, with Reservations for the remaining 4 days/week.

41. On February 21, 2020, the day after the GM knew that the Plaintiff was to transfer to Reservations, an email was sent by Ms. Bergeron, greatly reducing the extra 75% of the Plaintiff's abolished AR duties, which they had attempted to give her back 4 days earlier, with the intent to have the Plaintiff fail.

42. On March 20, 2020, the whole staff was furloughed because of the Covid-19 pandemic.

43. On June 12, 2020, Mr. Williams phoned the Plaintiff, with R. Ferrer conferenced in, to inform the Plaintiff that her status was going from furlough to laid off immediately.  They used the Covid-19 pandemic as a pretext, just as they previously used the 80% office outsourcing to India as a pretext.  Mr. Williams informed the Plaintiff that her layoff had nothing to do with her work performance and that when the hotel reopens, she was welcome to apply for any position available.

44. This verbiage by Ferrer and Williams was vocalized to the Plaintiff as a layoff, not the official termination that it was, as confirmed by official sources including Ms. Ferrer's separation agreement which was twice declined by the Plaintiff.  The Plaintiff believes Ms. Ferrer and Mr. Williams vocalized it this way to avoid using the terminology of "job abolishment" for the 2nd time, in the last 9 months of the Plaintiff's 32-year career.

45. On 6/12/2020, the hotel was scheduled to reopen in the fall of 2020, as stated on their website.  Reservations were available for 10/1/2020 on 6/12/2020.  Though the second wave of the pandemic altered what was planned on 6/12/2020, it is irrelevant to what their intent was on 6/12/2020.  Because the Defendant knew that the Plaintiff was taking legal action as early as January 2021, the Plaintiff continues to be a present hindrance to the Defendant's actions.

46. On 6/13/2020, the Plaintiff was paid her 4 weeks' vacation, which was accrued on 4/18/2020, via Federal Express, officially terminating and closing out the Plaintiff's employment.

47. The tricks, lies and scams against the Plaintiff, that commenced in racial bias to benefit a younger employee who was in violation of their own policy, created a ripple effect of events that led the Plaintiff to seek a position in Reservations at a lower salary.  The Plaintiff should not have, and would never have been in Reservations on 6/12/2020, but for the cause and effect of the lies, tricks, and retaliation mutated from racial favoritism and age discrimination.

48. A complaint was filed with the EEOC, as case 523-2021-01114 on March 30, 2021, within the 300 days from the Plaintiff's termination date to file a charge in the State of RI, and a Dismissal and Notice of Rights was issued to the Plaintiff on April 20, 2021.  The Plaintiff also

filed with the RI Commission for Human Rights and documented that she wants that claim cross filed with the EEOC case 523-2021-01114. The Plaintiff also stated in her complaint to the EEOC that she wants case 523-2021-01114 cross filed with the RI Commission for Human Rights.

49. The Plaintiff also witnessed Highgate's agents and employees ruthlessly mistreat another female employee named Kimberly Alves, who is approximately the same age as the Plaintiff. When the Plaintiff realized that she was lied to and was Highgate's next victim, the Plaintiff began to gather and document evidence of lies, schemes and harsh treatment against herself, through various forms.

50. In 2018, upon the Plaintiff's 30th year at the hotel, the Plaintiff was presented with a Happy 30th Anniversary email. Upon accrual, the Plaintiff's 32-year seniority was honored, accepted and recognized as the Plaintiff's original anniversary date of April 18, 1988 remaining intact. In April of 2019 and 2020, upon the 31st and 32nd years of the Plaintiff's original anniversary date of hire, the Plaintiff was granted 4 weeks of vacation time, reflecting 32 years of service. The employee's original hire date is shown on the profile of the ADP Payroll system, proving the employee's seniority was accepted and honored.

51. The Defendant, through its agents and employees, were inconsiderately ruthless, discriminatively bias, and their disparate schemes were extremely malevolent. The Defendant's agents and employees racially discriminated against the Plaintiff because she was not Latino, and because she was white.

52. The Plaintiff alleges that she had been a victim to racial discrimination and discriminated against because of her age (52), and retaliated against for opposing unlawful employment actions, in violation of the Age Discrimination in Employment Act of 1967, as amended, and all applicable state statutes.

53. The Defendant's policy of terminating employees based upon the maximum years of experience for jobs, including the Plaintiff's position, from which the Plaintiff was fired, discriminates against older workers in violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. The policy is based on unfounded stereotypes and assumptions about older workers.

54. Plaintiff brings this action seeking a declaration that the Defendant's policies and practices violate the ADEA. Plaintiff also seeks a permanent injunction requiring that such policies and practices be eliminated, as well as damages and attorney's fees.

## COUNT ONE

### Unlawful Intentional Age Discrimination (Disparate Treatment) in Violation of the ADEA, 29 U.S.C. § 621 et seq.

55. The Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

56. The Plaintiff filed a timely charge of age discrimination with the EEOC, as set forth above, has exhausted her administrative remedies, and she timely files this suit following notice of her right to sue.

57. At all relevant times, the Defendant has been, and continues to be, an employer within the meaning of the ADEA, 29 U.S.C. § 630. At all relevant times, the Defendant has been engaged in interstate commerce within the meaning of the ADEA, and has employed, and continues to employ, twenty or more employees.

58. The Defendant's conduct by its employees against the Plaintiff are violations of the ADEA, and were intentional and willful.

59. As a direct and proximate result of the foregoing violations of the ADEA, the Plaintiff has sustained economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within the Defendant.

    Wherefore, the Plaintiff prays for:

    a. Lost wages, employment benefits, and other compensation lost to her as a result of the Defendant's discriminating against her on the basis of his age, and prejudgment interest.

    b. Liquidated damages doubling the award of interest, wages, lost employment benefits, and other compensation lost to her as a result of Defendant's discriminating against her on the basis of her age.

    c. A reasonable attorney's fee, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

    d. Such other relief that this Court deems just and appropriate.

## COUNT TWO

### [Intentional Infliction of Emotional Distress]

60. Plaintiff hereby repeats and incorporates by reference all paragraphs above as if fully articulated herein.

61. The Defendant, through its agents and employees, intentionally caused severe emotional distress to the Plaintiff by their willful, wanton, extremely reckless and indifferent conduct, including but not limited to, engaging in senseless emotional attacks upon the person of the Plaintiff which directly led to her severe mental injuries.

62. The actions of the Defendant, through its agents and employees, go well beyond all bounds of decency and were done with the purpose of inflicting emotional distress.

63. The aforesaid actions by the Defendant, through its agents and employees, were so outrageous in character and were so extreme in degree that a reasonable member of the community would regard such conduct as atrocious, going beyond all possible bounds of decency and as being utterly intolerable in a civilized community.

64. As a direct actual and proximate result of the Defendant's [through its agents and employees] extremely, reckless, and indifferent conduct, the Plaintiff has suffered, and continues to suffer, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff demands judgment against the Defendant herein, in an amount which meets the jurisdictional limits of this Honorable Court, together with attorney's fees, punitive damages, costs, and any further relief this Honorable Court shall deem just and proper.

## COUNT THREE

### [Negligent Infliction of Emotional Distress]

65. Plaintiff hereby repeats and incorporates by reference all paragraphs above as if fully articulated herein.

66. The Defendant, through its agents and employees, negligently caused severe emotional distress to the Plaintiff by their extremely negligent actions and breach of their duty of care, including, but not limited to, engaging in a senseless mental and emotional attacks upon the person of the Plaintiff, which directly led to her severe injuries.

67. As a direct, actual and proximate result of the Defendant's [through its agents and employees] extremely, negligent, reckless and indifferent conduct, the Plaintiff suffered, and continues to suffer, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff demands judgment against the Defendant herein, in an amount which meets the jurisdictional limits of this Honorable Court, together with attorney's fees, punitive damages, costs, and any further relief this Honorable Court shall deem just and proper.

## COUNT FOUR

### [Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, et seq.]

68. Plaintiff hereby repeats and incorporates by reference all paragraphs above as if fully articulated herein.

69. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination on the basis of age in violation of the FEPA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the FEPA.

WHEREFORE, the Plaintiff demands judgment against the Defendant herein, in an amount which meets the jurisdictional limits of this Honorable Court, together with attorney's fees, punitive damages, costs, and any further relief this Honorable Court shall deem just and proper.

## COUNT FIVE

**[Rhode Island Civil Rights Act of 1990
R.I. Gen. Laws § 42-112-1, et. seq.]**

70. Plaintiff hereby repeats and incorporates by reference all paragraphs above as if fully articulated herein.

71. The Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of age and race against Plaintiff, as set forth above, and thereby interfered with Plaintiff's contract of employment in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RICRA.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the ADEA, the FEPA, and/or the RICRA.

2. An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An injunction and/or other equitable relief, including but not limited to, an award of back pay as well as front pay and other compensation and/or benefits to make her whole for all earnings and benefits she would have received but for Defendant's discriminatory conduct.

4. An award of compensatory damages.

5. An award of exemplary and/or punitive damages.

6. An award of liquidated damages.

7. An award of prejudgment interest, reasonable attorneys' fees, and costs.

8. Such other and further relief as this Court deems just and proper.

Dated:  June 13, 2021

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE IN THIS ACTION.**

        Respectfully submitted,

        /s/ David L. Graham
        _____
        David L. Graham, Esq. #3034
        Graham Law Offices
        840 Smithield Avenue, Unit 204
        Lincoln, RI 02865
        (401) 861-4056
        (401) 475-3822 fax #
        DGraham554@aol.com